UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARNELL RUSH #267008,                    Case No. 2:18-cv-00023

           Plaintiff,                       Hon. Gordon J. Quist
                                            U.S. District Judge
v.

S. L. NEWCOMB,

           Defendant.
_____/

## REPORT AND RECOMMENDATION

### Introduction

This is a civil rights action brought by state prisoner Darnell Rush pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on February 23, 2018. He alleged that Defendant – Corrections Officer Sheri L. Newcomb – violated his rights while he was confined at the Chippewa Correctional Facility (URF) by filing a retaliatory misconduct ticket against him. Defendant filed a motion for summary judgment (ECF No. 8) on the ground that Plaintiff failed to exhaust his available administrative remedies.

The undersigned respectfully recommends that this Court grant Defendant Newcomb's motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. A review of the record shows that Plaintiff failed to administratively exhaust his claim that he received a retaliatory misconduct ticket on April 28, 2016. The record shows that Plaintiff pleaded guilty during the

subsequent misconduct ticket hearing and did not raise the retaliation issue during the hearing. Although Plaintiff's grievance raised the retaliation issue, that issue was properly rejected. Plaintiff was advised of the process by which he could seek administrative redress of his retaliation claim, but he failed to pursue this process.

## Facts

Plaintiff has asserted two claims against Defendant Newcomb: (1) a First Amendment retaliation claim after he filed a grievance against Defendant, and (2) an Eighth Amendment claim resulting from Defendant's alleged derogatory statements to third parties, which resulted in Plaintiff's placement in administrative segregation, and being "taunted, dehumanized, and discredited." (ECF No. 18, PageID.135.)

The events that give rise to Plaintiff's complaint began on March 20, 2016, while Plaintiff was working in the prison kitchen. Plaintiff received a misconduct report from Defendant for disobeying a direct order and for insolence for refusing an order to leave the dining area. Plaintiff alleges that he was terminated from his job assignment pending the outcome of the misconduct ticket. Plaintiff was found not guilty after a misconduct hearing. The Class II misconduct hearing report stated:

> **Evidence and/or prisoner statement in addition to misconduct report: REHEARING**
>
> Misconduct was relisted for a re-hearing on 03/29/16. The hearing is reconvened on 04/05/16 and Prisoner Rush is in attendance. C/O Newcomb stated that she told Prisoner Rush to leave the chow hall as he was done working. C/O Newcomb stated that Prisoner Rush stated, "No, I don't have to leave. My itinerary says I work 'till 0930." C/O Newcomb added that she asked Prisoner Rush if he was done working and replied, "Yeah, I'm sitting here drinking my drink. Aint no law sayin' I can't sit here and drink my drink". C/O Newcomb stated that she told Prisoner Rush if he was done he was to leave and that she had

2

> to call a supervisor to tell him several times to leave before he left. Prisoner Rush stated that he wasn't finished working and that he stepped out from the dishtank area to have a drink of water because it was hot. Prisoner Rush stated that he left just before 0830 hours and wasn't in the kitchen at 0915 hours.
>
> **Reasons for findings:**
>
> Prisoner Rush is found not guilty of the charge based on the statements provided. Prisoner Rush stated that Trinity staff, specifically Mrs. M, allows them to leave the dishtank area to get water during detailed hours. Trinity staff, Ms. Goggin was called and confirmed that prisoners are allowed to leave their assignments and get water to drink and must do so in the dining area. Ms. Goggin added that Prisoners are not usually told to leave prior to their detailed times because Trinity staff have them help out where needed and that it isn't common for custody staff to have them leave. Furthermore, Prisoner Rush stated that he wasn't in F/S that day at 0915 hours because he is only detailed to work until 0830 hours as stated on his Itinerary, he stated that he was signed out of work at 0810 hours on 03/20/16. C/O Newcomb Indicated that the time of the offense on the misconduct was at 0915 hours but on the questionairre she confirmed that Prisoner Rush did sign out at 0810 hours on 03/20/16.

(Misconduct Hearing Report, ECF No. 18-1, PageID.155.)

Plaintiff complains that, after he was found not guilty of the misconduct, the matter should have been referred to Internal Affairs to investigate the false statements made by Defendant. Plaintiff believes that Defendant should have been discharged for employee misconduct.

The first grievance that is relevant to this case is **Grievance Number URF-16-04-1546-17A**, which is dated April 10, 2016. In this grievance, Plaintiff asserted that, on March 20, 2016, Defendant improperly issued a misconduct report that charged him with disobeying a direct order. Plaintiff pointed out that the violation time was 9:15 a.m. Plaintiff asserted that he could not have violated the order at that

3

time because he had left the area at 8:10 a.m. Plaintiff's work record supported that contention because he logged out of work at 8:10 a.m. Plaintiff argued that Defendant made a false statement and abused her authority. Plaintiff explains that he had just been released from mental health services and that Defendant humiliated him in front of his peers, thus causing his issues to resurface. (ECF No. 9-2, PageID.82.)

The Step I investigation associated with Grievance URF-16-04-1546-17A revealed that the events occurred as stated in the misconduct report. Plaintiff refused an order to leave the chow hall. According to the investigation, the "not guilty" finding was due to the error in the recorded incident time. (PageID.83.) As a result, the grievance was denied at step I, because there was no evidence of harassment or humiliation. (*Id.*) At Step II, Plaintiff alleged that Defendant's conduct was "inextricably linked to retaliatory motive." (ECF No. 18-1, PageID.163-165.) Plaintiff's grievance was denied at Step II (ECF No. 9-2, PageID.81) and at Step III (PageID.79.)

Plaintiff alleges that, after he was found not guilty of the misconduct, Defendant engaged in further harassment by (1) moving him from the West side (the honor side) to the less desirable East side of URF, (2) increasing his security level to IV, (3) attempting to get him fired from his job, (4) submitting his work evaluation reports on the same dates that she filed misconduct tickets, and (5) mistreating and dehumanizing him through placement in segregation, in violation of his Eighth Amendment rights. (ECF No. 1, PageID.5.)

4

Plaintiff asserts that he received a retaliatory misconduct ticket on April 28, 2016, after he refused Defendant's order to empty his pockets during a shake-down. Plaintiff states that he only had his ID and walked away. (ECF No. 18-1, PageID.172.) Plaintiff was issued a misconduct report for disobeying a direct order. (*Id.*) Plaintiff pleaded guilty to the charge at the hearing and received a two-day Toplock sanction. (Misconduct Hearing Report, PageID.188.)

Plaintiff then filed **Grievance Number URF-16-05-1829-27A**, which is the second grievance that is relevant to this case. It is dated May 5, 2016, and lists an April 28, 2016, incident date. (ECF No. 9-2, PageID.94.) Plaintiff stated that Defendant wrote the April 28, 2016 disobeying-a-direct-order misconduct against him in retaliation for Plaintiff's conduct in writing Grievance Number URF-16-04-1546-17A.

This Grievance asserts that Defendant engaged in retaliatory conduct after the "not guilty" misconduct finding by pointing at Plaintiff, whispering to her co-workers, loudly stating that Plaintiff was a trouble maker, and by jeopardizing his health due to creating a hostile work environment. (*Id.*) The Grievance was rejected at Step I as asserting a non-grievable issue regarding decisions made during a misconduct hearing. Plaintiff was instructed that his "recourse is through the rehearing process not through the grievance process." (PageID.95.) Thus, Plaintiff was required to seek reopening of his misconduct hearing.

Plaintiff's Step II grievance appeal indicated that he was challenging actions that "post the date of the decision," contesting the misconduct, and his transfer from

5

the West unit to the East unit. (PageID.96-97.) The rejection was upheld at Step II (PageID.93) and at Step III. (PageID.91.)

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *Morris v. Oldham Cnty. Fiscal*

6

*Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 James William Moore, et al., *Moores Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner

7

may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits

8

the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[1]

---

[1] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596.

9

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R.

---

For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct ticket, the inmate must first raise that issue during the misconduct hearing and

11

appeal any adverse decision before administrative remedies will be considered exhausted. Under Michigan a law a prisoner must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Parker v. Gainer*, W.D. Mich. Case No. 1:16-cv-1302, ECF No. 67 at PageID.337 (April 2, 2018) (stating that "[a]llegations of retaliation via misconduct tickets are properly raised at misconduct hearings—accordingly, retaliation claims addressed at a hearing cannot be grieved. . . It follows, then, that a retaliation claim is exhausted at the hearing stage if a prisoner raises the retaliation issue.") (citing *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011)). Relatedly, when a prisoner fails to assert in a minor misconduct hearing that a misconduct ticket was written against him for retaliatory purposes (an issue that may not be addressed in the grievance process), then the prisoner has not exhausted his administrative remedies.

## Analysis

As previously stated, Plaintiff filed two grievances regarding the issues set forth in his complaint. **Grievance URF-16-04-1546-17A** was properly exhausted. But that grievance does not allege facts that could support any of the alleged constitutional violations. Plaintiff's retaliation claim is based upon Defendant's alleged response to Plaintiff's filing of **Grievance URF-16-04-1546-17A**. Stated differently, the filing of Grievance URF-16-04-1546-17A is the protected conduct that triggered Defendant's allegedly retaliatory actions. This grievance is relevant to the

extent that it satisfies the element of protected conduct necessary to support a retaliation claim. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Burton v. Rowley*, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

In **Grievance URF-16-05-1829-27A**, Plaintiff asserted that, on April 28, 2016, he received a false misconduct ticket in retaliation for filing his prior grievance. This new grievance was rejected because it raised non-grievable issues concerning a misconduct proceeding. Plaintiff was instructed to raise his issues during the misconduct process and appeal procedures. A rejected grievance is not properly exhausted. *Jones*, 549 U.S. at 218-19.

Although Plaintiff's claim that Defendants wrote the April 28 misconduct ticket in retaliation for his earlier grievance is non-grievable, Defendant argues that this claim is unexhausted because Plaintiff was required to exhaust this retaliation claim during the misconduct hearing. The record reflects that Plaintiff never raised his retaliation claim during the misconduct hearing. (ECF No. 9-4, PageID.107.) In fact, Plaintiff pleaded guilty to the misconduct violation during the hearing.

The undersigned agrees with this position. Plaintiff's second grievance raised a non-grievable issue in that he claimed that he received a false misconduct ticket. Pursuant to MDOC policy, decisions made during misconduct hearings are non-grievable. MDOC Policy Directive 03.02.130 at ¶ J. Therefore, the grievance procedure was not available to Plaintiff. Instead, Plaintiff should have "file[d] a

motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1). Plaintiff failed to assert any fact that could support a claim of retaliatory action at the time of his misconduct hearing, and he did not petition to reopen this hearing. Thus, he failed to exhaust his remedies with regard to his claim that the misconduct ticket was retaliatory.

## Recommendation

I respectfully recommend that this Court rule that Plaintiff failed to administratively exhaust his claim that he received a retaliatory misconduct ticket on April 28, 2016. The record shows that Plaintiff pleaded guilty during the subsequent misconduct ticket hearing and did not raise the retaliation issue during the hearing. Although Plaintiff's grievance raised the retaliation issue, that issue was properly rejected. Plaintiff was advised of the process by which he could seek administrative redress of his retaliation claim, but he failed to pursue this process. I respectfully recommend that the Court grant Defendant Newcomb's motion for summary judgment (ECF No. 8) due to Plaintiff's failure to properly exhaust his administrative grievance remedies on each of the claims that he asserts in his complaint. Acceptance of this recommendation will result in the dismissal of this case.

Dated: May 24, 2019 /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).